# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

ROBERT Z. WHIPPLE, III,               )
                                      )
                  Plaintiff,          )
                                      )
v.                                    )          No.     3:24-CV-335-TRM-JEM
                                      )
KNOX COUNTY and FNU                   )
WHITEHEAD,                            )
                                      )
                  Defendants.         )

## MEMORANDUM AND ORDER

This is a *pro se* action for violation of 42 U.S.C. 1983 in which Plaintiff, an inmate in the

Knox County Detention Center ("KCDF"), claims he did not timely receive needed medical

treatment during his KCDF confinement (Docs. 106, 106-1). Now before the Court are a number

of filings from both parties, which the Court categorizes as follows: (1) Plaintiff's amended

complaint (*Id.*); (2) Defendants' motions to dismiss Plaintiff's original complaint (Docs. 92, 93);

(3) Plaintiff's motion to withdraw moot motions (Doc. 108); (4) the parties' motions regarding

stays (Docs. 65, 104, 125); (5) Plaintiff's motions for default (Docs. 70, 86); (6) Plaintiff's

motions for authorities (Docs. 99, 148, 154, 162); (7) the parties' motions for extensions (Docs.

90, 97, 109, 127, 149, 154, 161, 163, 170); (8) Plaintiff's motion regarding lost mail (Doc. 155);

(9) Plaintiff's motions seeking a status update (Docs. 132, 168); (10) Plaintiff's motions

regarding appointment of counsel (Docs. 116, 142); (11) Plaintiff's motion to seal exhibits (Doc.

111); (12) the parties' motions regarding discovery (Docs. 98, 137, 150); (13) Plaintiff's motions

for contempt and sanctions (Docs. 113, 126); and (14) Plaintiff's motions seeking preliminary

injunctions (Docs. 69, 73, 120, 121, 133, 156, 160).

The Court will provide a notice to both parties before screening Plaintiff's amended complaint (Docs. 106, 106-1) and addressing the ripe pending motions.

I.    NOTICE

The Court recognizes the serious nature of Plaintiff's condition, allegations, and desire for rapid treatment. However, Plaintiff has inundated this Court with repetitive motions and filings from which it is clear that he seeks to have the Court oversee each step of his medical treatment, from all doses of medications to medical appointments, as well as other conditions of his confinement that he speculates could potentially affect this action and/or additional claims he implies he may add to this case in the future. And Plaintiff continues to refer to future claims and/or adding defendants in this case in various filings even though the Court previously warned him that continual amendments of complaints are disfavored, so he should include all claims he would bring in this action in the single amended complaint the Court allowed him to file (Doc. 10, at 7).

But the Court has a significant caseload, with many cases from prisoners like Plaintiff, and it is not the vehicle through which Plaintiff or any other prisoner may micromanage his medical care or any conditions of his confinement. Moreover, Plaintiff's redundant and prolific filings only serve to complicate the record and delay progress on the substantive portion of this case.

Accordingly, the Court specifically **NOTIFIES** Plaintiff that the Court will look unfavorably on any future (1) motions seeking to control the conditions of his confinement; and (2) any attempts to amend his complaint, whether through piecemeal filings or a full complaint.

The Court additionally **NOTIFIES** Defendants that, as it will apply the screening standard set forth below to Plaintiff's amended complaint in a manner that is substantively

2

identical to that of Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will also look unfavorably on any motions to dismiss this action for failure to state a plausible claim for relief.

## II.    AMENDED COMPLAINT SCREENING

### A.    Standard

District courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review, a prisoner complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe *pro se* pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B.    Allegations

Defendants Spangler and Keeble "promulgate[]" the Knox County Sheriff's Office medical policies (Doc. 106, at 5). Plaintiff has "Barrett's Esophagus," which is "a

gastrointestinal [('GI')] condition associated with increased cancer risk and requiring regular cancer screening with an [esophagogastroduodenoscopy ('EGD')]" (*Id.* at 6). On August 14, 2023, while Plaintiff was confined in FCI Beckley, a doctor performed an EGD/biopsy on Plaintiff, and "[t]he results of the biopsy were abnormal and indicated dysplasia" (*Id.*). A nurse told Plaintiff that "dysplasia means cancer cells are present" (*Id.*). Accordingly, Plaintiff believed he had cancer until January 28, 2025, when he spoke to a nurse at the University of Tennessee Medical Center's Gastroenterology Clinic ("UTGC"), who told him that he would not know if he had cancer until he got another EGD/biopsy (*Id.*). "After the 8-14-23 EGD/biopsy, 'close patient follow-up [was] recommended,'" and the doctor specifically recommended that Plaintiff receive either a repeat EGD/biopsy in November of 2023 or referral to a "tertiary hospital for EMR" (*Id.* at 6). According to Plaintiff, "EMR is an Endoscopic Mucosal Resection which is a procedure to remove early-stage cancer and precancerous growths from the lining of the digestive tract" (*Id.*). However, FCI Beckley did not take Plaintiff for this follow-up appointment (*Id.*).

In February 2024, Plaintiff was released from FCI Beckley and extradited to Knoxville, where he was booked into the KCDF on February 22, 2024 (*Id.*). Also on February 22, 2024, Plaintiff "sent a sick call informing medical staff of [his] abnormal biopsy and requested needed follow-up care" (*Id.*). "An unknown staff member replied, 'You were seen by medical for this issue'" (*Id.*). But this was incorrect (*Id.*).

On February 24, 2024, Plaintiff sent a sick call "because [he] was vomiting blood and not receiving [his] GI medications" (*Id.*). "An unknown staff member gave the stock reply, 'You were seen by medical for this issue'" (*Id.*; Doc. 106-1, at 1). On February 27, 2024, Plaintiff filed a grievance about not receiving "GI follow-up care," to which Defendant Federici

responded "GI care is very difficult to get" (Doc. 106-1, at 1). Defendant Federici also "blamed a lack of records for not trying to get [Plaintiff] the needed GI follow-up care" (*Id.*). Plaintiff also sent a sick call requesting the names of the individuals answering his sick calls and grievances, but a jail employee denied this request (*Id.*). Plaintiff additionally filed a grievance "about getting the wrong dose of [his] GI medications," to which Defendant Federici responded that "they obtained the wrong medical records" (*Id.*). On March 20, 2024, Plaintiff was released from KCDF without receiving the "necessary GI follow up care or correct . . . GI medication doses" (*Id.*).

On June 15, 2024, Plaintiff was again booked into the KCDF (*Id.*). During intake, Plaintiff told Defendants Clemons and McBrayer of his "Barrett's, abnormal biopsy, and need for GI follow-up" (*Id.*). On June 16, 2024, Plaintiff received a physical and also told Defendants Newman, Whitehead, and Jones about "[his] Barrett's, abnormal biopsy, and need for GI follow-up" (*Id.*). On June 17, 2024, Defendant Keeble prescribed Plaintiff GI medication (*Id.*). Plaintiff therefore asserts that "it can be plausibly inferred that [Defendant Keeble] knew or should have known of [his] abnormal biopsy and need for GI follow-up care from [his] chart" (*Id.* at 2). Plaintiff claims that, as of the date on which he drafted his amended complaint, he had not seen a doctor during his two KCDF confinements, and Defendant Keeble "did not order GI follow-up care for [him]" (*Id.*).

On June 18, 2024, Plaintiff sent a sick call "informing medical staff of [his] urgent need for follow-up care" that was seven months overdue (*Id.*). "An unknown staff member advised that they need[ed] a records release for medical records, even though they had [Plaintiff's] release signed in March" (*Id.*). On June 27, 2024, Knox County officials received records from Raleigh General (*Id.*). On an unspecified date, Plaintiff filed a grievance regarding his failure to

5

receive GI care, and "Defendant Federici replied that GI appointments are difficult to obtain for indigent prisoners" (*Id.*).  Plaintiff appealed, and the appeal response stated "[p]er [Knox County Sheriff's Office] policy the inmate is responsible for the expenses of any elective surgery or procedures" (*Id.*).  Thus, Plaintiff concludes that GI care for his abnormal biopsy and cancer screening are procedures that Defendant "Knox County will not provide . . . as a matter of policy" (*Id.*).  Plaintiff's "final appeal [of the grievance] was denied" (*Id.*).  Plaintiff then filed this lawsuit (*Id.*).

According to Plaintiff, Defendants immediately began to retaliate against him after this lawsuit proceeded (*Id.*).  Plaintiff specifically states that after he filed a motion seeking a temporary restraining order, "Defendants and their counsel began lying repeatedly to the Court, indicating that [he] would be seen by a GI specialist physician in January 2025," after the appointment was rescheduled twice, but Plaintiff has received medical records that do not show rescheduling (*Id.* at 3).  Plaintiff therefore asserts that this is "likely because Defendants were lying" (*Id.*).

Plaintiff also asserts that the medical records show that on July 2, 2024, Defendant Newman ordered Defendant McIntosh to schedule Plaintiff for an EGD but do not show any effort by Defendant Newman to ensure that Plaintiff received this care or to supervise Defendant McIntosh (*Id.*).  Additionally, according to Plaintiff, on October 15, 2025, Defendant McIntosh filled out a United States Marshals Service preauthorization form for Plaintiff's January 2025 GI appointment that Defendant Norris rejected the next day (*Id.*).  Thus, Plaintiff claims that all Defendants knew of his serious medical need for GI care no later than July 2, 2024, except Defendant Norris, whose earliest involvement was in October 2024 (*Id.*).

6

On January 28, 2025, Plaintiff had an appointment at the UTGC during which he was seen by a nurse, rather than a GI specialist, contrary to Defendants' statements to the Court (*Id.* at 3–4). During this appointment, Plaintiff did not receive an EGD, which the nurse stated was because Knox County failed to send the relevant medical records, resulting in Plaintiff being scheduled only for a consult (*Id.* at 4). Plaintiff states that although Defendants have stated to the Court that UTGC requires a consultation, this conflicts with what the nurse told him, and a note from Defendants Federici recommending that Plaintiff "establish[] with a local GI" also shows Defendants lied to the Court (*Id.*).

Plaintiff further opines that evidence shows that "Defendants' willingness to provide [him] with an EGD . . . changes according to who is paying," in support of which he states that he was a state inmate until June 27, 2025, when he became a federal inmate, and that Defendants ordered an EGD for him five days later, as well as other speculative assertions (*Id.* at 5). Plaintiff states that he was scheduled to be sentenced on April 2, 2025, and would be returned to state custody soon after that, so he asked to delay his sentencing, but the government opposed that request and the Court denied it (*Id.*). Plaintiff therefore speculates that the EGD would not occur in April (*Id.*).

Plaintiff further asserts that Defendants have failed to ensure he receives an EGD and sees a doctor even though in April 2025, he will be "seventeen (17) months overdue" for an EGD, ten months of which Plaintiff attributes to Defendants (*Id.* at 7). During this delay, Plaintiff has "experienced unnecessary pain and deteriorating health including: nausea, bloody vomit, difficulty swallowing, and reflux pain" (*Id.*). Plaintiff states that he and his criminal attorney have asked Defendant Knox County to consider taking Plaintiff to other GI providers due to the delays with UTGC, "but they refused to answer and it appears from the records that

7

they made no attempt to do so" (*Id.*).  According to Plaintiff, an EGD would have improved his symptoms, and other procedures done at the same time as an EGD could "alleviate [his] pain and nausea as well as stop any bleeding in his upper GI" (*Id.*).  Plaintiff therefore alleges "a complete denial of treatment" (*Id.*).

In a later-filed emergency motion for appointment of counsel that, for purposes of efficiency, the Court liberally construes as a supplement to the complaint,[1] however, Plaintiff states that he "recently learned" that Defendants' delay in providing him GI care resulted in his dysplasia progressing to abnormal growths and an EGD showed "tumor-like 'nodules . . . [that] are probably cancer," for which the physician "blamed the nearly two (2) year delay" (Doc. 116, at 1).  Plaintiff further asserts that he requires "another surgery to cut out the nodules and determine if the cancer is spreading" and this is now "a delay of treatment case . . . ." (*Id.* at 2).

Based on his EGD scheduling allegations, Plaintiff asserts claims for deliberate indifference, intentional infliction of emotional distress, and negligent infliction of emotional distress, presumably against all Defendants (Doc. 106-1, at 8).

Plaintiff next asserts that after a UTGC nurse prescribed him a wedge to ensure his head is elevated more than thirty degrees to relieve "some nighttime reflux symptoms," Defendant Whitehead refused to provide the wedge, and Plaintiff learned from the medical records that this was due to Defendant Federici stating that he should use a folded mat instead (*Id.*).  However, Plaintiff states that a folded mat will not elevate his head thirty degrees and does not provide him

---

[1]  Accordingly, the Clerk is **DIRECTED** to file the documents numbered 106, 106-1, and 116 as a single second amended complaint.  However, the Court **NOTIFIES** Plaintiff that this is the **ONLY** time the Court will address a piecemeal filing as a part of his complaint, that the Court does so only to progress this action without further delay for the benefit of both parties, and the Court reemphasizes its earlier notice to Plaintiff that it will look unfavorably on any future attempts to amend his complaint.

relief, but when he used a wedge in the past "it drastically reduced [his] reflux pain" (*Id.*). Plaintiff states that he asserts a claim for deliberate indifference based on these allegations (*Id.* at 9).

Plaintiff next claims that Defendant Federici prescribed him a "Heart Healthy" diet, but the name of this diet is misleading, as Plaintiff still receives the same trays as other inmates, "includ[ing] spicy chili mac and fatty beef stew" (*Id.*). According to Plaintiff, this diet is actually a restriction on his ability to order certain items from commissary and KCDF staff assigns this diet to inmates with various medical conditions, so "[i]t is not tailored to individual medical needs or even the needs of any single diagnosis" (*Id.*). Plaintiff further claims that soon after he sought sanctions against defense counsel in a filing that alleged lies on the part of Defendant Federici, he sent a written request to refuse the prescribed diet pursuant to Tenn. Code Ann. § 68-11-11803(a) (to which Plaintiff refers as the "Tennessee Health Care Decisions Act"/"THCDA") that Defendant Federici denied (*Id.*). Based on this timing and Defendants' alleged use of the term "Heart Healthy" in unspecified filings, Plaintiff "infer[s] a retaliatory motive" (*Id.*). Plaintiff therefore asserts claims for retaliation, due process violations, violation of the Rehabilitation Act, violation of the Americans with Disabilities Act, and violation of the THCDA (*Id.* at 10).

Plaintiff has sued Knox County, Jacob Clemons, Melissa Federici, Deanna Jones, Donald Keeble, FNU McBrayer, Margaret McIntosh, Julie Newman, Barbara Norris, and Sherry Whitehead (*Id.* at 1, 2, 5). As relief, Plaintiff requests compensatory and punitive damages and injunctive relief (*Id.* at 11).

### C.    Analysis

#### 1.    EGD/Biopsy Scheduling

As set forth above, Plaintiff claims that he told Defendants Clemons and McBrayer of his "Barrett's, abnormal biopsy, and need for GI follow-up" at intake on June 15, 2024, and told Defendants Newman, Whitehead, and Jones of these conditions at a physical on June 16, 2024 (*Id.* at 1).  Plaintiff also asserts that because Defendant Keeble wrote him a prescription for GI medication on June 17, 2024, this Defendant must have known about his medical history and need for medical care (*Id.* at 1–2).  Plaintiff further claims that after he filed a grievance regarding his failure to receive GI care, "Defendant Federici replied that GI appointments are difficult to obtain for indigent prisoners" (*Id.*).  Plaintiff additionally asserts that medical records show that on July 2, 2024, Defendant Newman ordered Defendant McIntosh to schedule Plaintiff for an EGD, but the medical records do not show that Defendant Newman ensured that Plaintiff received this care or supervised Defendant McIntosh (*Id.* at 3).  Moreover, according to Plaintiff, on October 15, 2025, Defendant McIntosh filled out a United States Marshals Service preauthorization form for Plaintiff's January 2025 GI appointment that Defendant Norris rejected the next day (*Id.*).

 In evaluating whether Plaintiff's complaint states a plausible § 1983 claim against Defendants Knox County, Clemons, McBrayer, Newman, Whitehead, Jones, Keeble, Federici, Newman, McIntosh, and Norris based on the delay in obtaining GI specialist treatment for Plaintiff, the Court presumes that Plaintiff was a pretrial detainee during the relevant time period and therefore analyzes the allegations under the Fourteenth Amendment.  *Brawner v. Scott Cnty.,* 14 F.4th 585, 596 (6th Cir. 2021).  For Plaintiff's complaint to state a plausible claim for failure to protect him as a pretrial detainee, he must set forth facts from which the Court can infer

that a Defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citations omitted).

For the reasons set forth below, Plaintiff's § 1983 claim that he did not timely receive needed GI care will proceed only against Defendants Newman and McIntosh.

### a. State Law Claims

As set forth above, Plaintiff seeks to assert state law claims for intentional and negligent infliction of emotional distress arising out of the delay in scheduling his EGD. Under Tennessee law, both these claims require a showing that the plaintiff suffered a serious mental injury. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012) ("[T]he torts of intentional infliction of emotional distress and negligent infliction of emotional distress share a common, identical element—the 'serious or severe' mental injury requirement"). Plaintiff, however, does not allege any severe mental injuries in his complaint or the motion the Court liberally construes as a supplement to the complaint (Docs. 106, 106-1, 116). Accordingly, these state law claims are **DISMISSED**.

### b. Knox County

Defendant Knox County may only be liable under § 1983 if its custom or policy caused a constitutional violation. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). A plaintiff may show

> an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

11

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). To be actionable under § 1983, a municipal custom or policy—whether implicit or explicit—must be "so widespread as to have the force of law[,]" as characterized by the "persistent practices of state officials." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970).

Plaintiff's amended complaint does not adequately allege that an illegal official custom or policy of Knox County caused the delay in him receiving an EGD. While Plaintiff states his grievance request for follow up GI care was denied with a statement that prisoners must pay for elective care, Plaintiff provides no facts suggesting that this statement reflects a widespread custom or policy under which prisoners had to pay for needed medical care. Nor does he plausibly allege that a policy-making official ratified any illegal actions, any policy of inadequate training or supervision, or the existence of a custom or tolerance of similar constitutional violations.

### c.     Federici

As to Defendant Federici, Plaintiff alleges only that this Defendant responded to his grievance requesting GI care by stating that such treatment is difficult to obtain for indigent prisoners. This allegation does not plausibly allege a constitutional violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and failure to respond to or remedy the complaint was insufficient to impose liability under § 1983).

### d.     Keeble

Next, as to Defendant Keeble, Plaintiff asserts that this Defendant knew or should have known of his need for GI care because this Defendant prescribed him GI medications soon after he entered the KCDF. But while Plaintiff speculates that Defendant Keeble must have reviewed

12

his medical records in prescribing these medications, Plaintiff provides no facts about what medical records Defendant Keeble allegedly read, much less facts about the content of those medical records that would allow the Court to plausibly infer that this Defendant recklessly disregarded a substantial risk of harm to Plaintiff after reading those records, or that Defendant Keeble was responsible for scheduling additional care for Plaintiff based on his review of the medical records. *Id.*; *Cox v. Barksdale*, 810 F.2d 200, at *1 (6th Cir. Nov. 13, 1986) ("It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation . . . ." (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) and *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982))). As such, the Court cannot plausibly infer that Defendant Keeble violated Plaintiff's constitutional rights with regard to the delay in obtaining additional GI care for him.

### e. Clemons, McBrayer, Newman, Whitehead, and Jones

As to Defendants Clemons, McBrayer, Newman, Whitehead, and Jones, Plaintiff states he told them about his Barrett's esophagus, abnormal biopsy, and need for follow up GI care at intake and during his physical. But again, Plaintiff does not set forth any facts from which the Court can plausibly infer that these individuals were responsible for ensuring he received GI medical care based on these statements but failed to do so. And a prisoner's act of telling a jail official that he has a health issue does not make that official responsible for scheduling the prisoner's medical care. *Shehee*, 199 F.3d at 300; *Cox*, 810 F.2d at *1 (citations omitted).

### f. Norris

Plaintiff's only allegation as to Defendant Norris is that she denied a preauthorization form for his January 2025 GI appointment. But Plaintiff does not set forth any facts suggesting that this denial affected the scheduling of the GI appointment, or that Defendant Norris knew or

should have known that this denial would result in an unjustifiably high risk of serious harm to Plaintiff.

### g. Newman and McIntosh

Liberally construing Plaintiff's amended complaint allegations against Defendant Newman and McIntosh in Plaintiff's favor, they plausibly allege that on July 2, 2024, these Defendants knew that Plaintiff needed an EGD and were responsible for ensuring he timely received it but failed to do so. And, as set forth above, Plaintiff also claims that this delay caused him injury (Doc. 116, at 1–2). As such, this claim will proceed against these Defendants.

### 2. Wedge

Plaintiff next claims that after a UTGC nurse "created a treatment plan" for him that included a wedge to keep his head elevated at least thirty degrees to relieve "bothersome nighttime reflux symptoms," Defendants Whitehead and Federici did not obtain a wedge for him and instead told him to fold a mat to elevate his head (Doc. 106-1, at 8). However, Plaintiff states that while a wedge would provide him relief, a folded mat does not (*Id.* at 9).

But these allegations do not allow the Court to plausibly infer that either Defendant Whitehead or Defendant Federici recommended Plaintiff use a folded mat instead of a wedge even though they knew or should have known the mat would not provide him relief in a manner that recklessly disregarded a substantial risk of harm to him. As such, this claim is **DISMISSED**.

### 3. Diet

Plaintiff next claims that soon after he sought sanctions against defense counsel due to an affidavit from Defendant Federici in this action, he requested to refuse the "Heart Healthy" diet that Defendant Federici prescribed for him because it does not mean he receives different food

trays from other inmates and is actually a commissary ordering restriction, but Defendant

Federici denied this request per Knox County policy (*Id.*).  Plaintiff claims that this denial (1)

violated his right to refuse treatment under Tenn. Code Ann. § 68-11-1803(a), (2) was retaliation,

(3) violated his due process rights, and (4) violated both the Americans with Disabilities Act

("ADA") and the Rehabilitation Act ("RA") (*Id.* at 9–10).

### a.      Tenn. Code Ann. § 68-11-1803(a)

Plaintiff first claims that his inability to refuse the prescribed "Heart Healthy" diet

violates Tenn. Code Ann.  § 68-11-1803(a).  The title of Tenn. Code Ann. § 68-11-1803 is

"Individual instructions, advance directives for health care, health care decisions, and other

instruments."  Section (a) of this statute provides that "[a]n adult or emancipated minor may give

an individual instruction. The instruction may be oral or written. The instruction may be limited

to take effect only if a specified condition arises."  Tenn. Code Ann. § 68-11-1803(a).  But

neither the plain language of this statute nor any Tennessee case law this Court has located

suggests that Tenn. Code Ann. § 68-11-1803(a) provides a cause of action under which a

prisoner may challenge restrictions on his commissary orders.   And the Court declines to create

such a cause of action.

### b.      Retaliation

Plaintiff also alleges that Defendant Federici's denial of his request to refuse this diet was

retaliation for him filing a motion for sanctions regarding an affidavit from her.  A § 1983

retaliation claim requires a plaintiff to show that: (1) he "engaged in protected conduct; (2) an

adverse action was taken against [him] that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) there is a causal connection between elements one

and two – that is, the adverse action was motivated at least in part by the plaintiff's protected

conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In limited circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, solely "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579 (6th Cir. 2004).

Plaintiff's complaint does not plausibly allege that Defendant Federici's denial of his request to refuse the prescribed diet was due to any motion in this case, especially as he provides no facts to support this assertion and states that she relied on a Knox County policy in denying this request. As such, this allegation fails to state a plausible claim for relief under §1983.

### c. Due Process

Plaintiff also claims that his inability to refuse the prescribed diet violates his right to due process. However, it is apparent from the totality of Plaintiff's allegations that the only diet limitation he challenges is his inability to order certain items from commissary. To state a cognizable due process claim arising out of the restriction on his commissary ordering, Plaintiff must plausibly allege that his right to commissary is a liberty interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). Plaintiff also must show that the restricted commissary ordering imposes an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But it is well settled that prisoners "have no federal constitutional right to purchase items (food or non-food) from a commissary at

16

all." *Adams v. Hardin Cnty. Det. Ctr.*, No. 3:16–CV–P29–CRS, 2016 WL 2858911, at *3 (W.D. Ky. May 16, 2016) (collecting cases).

Accordingly, Plaintiff's amended complaint fails to plausibly allege a violation of his due process rights arising out of his inability to refuse the prescribed diet.

### d.    ADA/RA

Plaintiff also claims that the denial of his attempt to refuse the "Heart Healthy" diet violated the ADA and RA. The ADA requires a plaintiff to establish, among other things, that he has a disability that was the sole reason for discrimination against him. *See Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000).

To the extent Plaintiff seeks to assert ADA and RA claims against Defendant Federici, however, "the ADA [does not] impose liability upon individuals." *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (citing 29 U.S.C. § 794(b)(RA); 42 U.S.C. § 12131(1)).

Plaintiff's allegation that Defendant Federici's denial of his request to refuse the heart healthy diet was due to a custom or policy of Defendant Knox County also fails to state a plausible ADA/RA claim against Defendant Knox County. Specifically, while this assertion indicates that Defendant Knox County has a policy under which inmates cannot refuse the prescribed diet, Plaintiff sets forth no facts suggesting that the sole purpose of this custom or policy is discrimination due to his disability rather than, for example, an attempt to manage inmates' health conditions in a manner that may prevent additional municipality health costs. Thus, this allegation does not allow the Court to plausibly infer that Knox County has an illegal official policy or legislative enactment that is discriminatory, that a policy-making Knox County

official ratified any illegal discriminatory actions, any policy of inadequate training or supervision leading to discrimination, or the existence of a custom or tolerance of similar constitutional violations.

Accordingly, Plaintiff's ADA/RA claims fail to allow the Court to plausibly infer a violation of Plaintiff's constitutional rights.

### D. Conclusion

For the reasons set forth above, only Plaintiff's claim that on July 2, 2024, Defendant Newman ordered Defendant McIntosh to schedule Plaintiff for an EGD but neither Defendant Newman nor Defendant McIntosh ensured that Plaintiff timely received this treatment will proceed herein. All other claims and Defendants are **DISMISSED**.

Also, the Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Newman and McIntosh. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the Clerk shall sign and seal the summonses and forward them to the United States Marshal for service pursuant to Rule 4 of the Federal Rules of Civil Procedure. Service on Defendants Newman and McIntosh shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective.

Plaintiff is **NOTIFIED** that failure to timely return the completed service packets will result in dismissal of this action. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against her.

18

### III. MOOT MOTIONS

As Plaintiff has moved to withdraw a number of motions (Docs. 70, 72, 79, 85, 86) as moot (Doc. 108), this motion is **GRANTED** to the extent that the Clerk is **DIRECTED** to terminate the relevant motions (Docs. 70, 72, 79, 85, 86).

Additionally, Defendants' motions to dismiss Plaintiff's original complaint (Docs. 92, 93) are **DENIED** as moot in light of Plaintiff's amended complaint (Docs. 106, 106-1, 116).

### IV. AUTHORITIES

The record establishes that Defendants have provided Plaintiff the cases he requested in all but the last two of his motions requesting this relief (Docs. 99, 110, 148, 154, 155,[2] 158, 162, 164). Accordingly, Plaintiff's first four motions seeking this relief (Docs. 99, 148, 154, 155) are **DENIED** as moot.

As Plaintiff's most recent motion (Doc. 169) for this relief indicates that Defendants sent him the wrong cases in response to his previous similar motion (Doc. 162), however, these two motions (Docs. 162, 169) are **GRANTED** only to the extent that Defendants are **ORDERED** to provide Plaintiff with the case law he has requested in them within five (5) days of the date of entry of this order, if they have not already done so.

Also, for purposes of efficiency, as to all future similar motions, Plaintiff is **ORDERED** to request the relevant legal authorities **DIRECTLY** from Defendants' counsel, and Defendants' counsel **SHALL** respond thereto by providing Plaintiff with the requested authorities within

---

[2]  In this motion, Plaintiff actually states that on June 9, 2025, he sent the Court a motion regarding an extension and seeking authorities that the Court did not receive (Doc. 155). But the record establishes the Court received this motion (Doc. 154), so this motion is also moot.

fifteen (15) days. Plaintiff therefore **SHALL NOT** file a motion with the Court unless Defendants fail to meet this deadline.

## V.    EXTENSIONS

The parties have filed numerous unopposed motions for extension (Docs. 97, 109, 127, 149, 154). In light of the lack of any opposition thereto, these motions (*Id.*) are **GRANTED in part** only to the extent that the Court deems the parties' relevant filings timely filed.

Additionally, Plaintiff's motions for extension of time to file a response to the motion to quash his subpoena (Docs. 161, 163, 170) are **GRANTED** to the extent that Plaintiff shall have up to and including **October 6, 2025**, to file that response.

Plaintiff also filed a motion for a blanket extension of fourteen days for his filings due to incidents regarding his mail in the jail (Doc. 90). This motion (*Id.*) is **GRANTED** only to the extent that the Court will provide Plaintiff an additional fourteen days for relevant filing deadlines.

## VI.    STATUS

Plaintiff's motions regarding the status of this case (Docs. 132, 168) are **GRANTED in part** only to the extent that the Court enters the instant memorandum and order.

## VII.    SEAL

Plaintiff's unopposed motion to seal exhibits (Doc. 111) is **GRANTED** only to the extent that the Clerk is **DIRECTED** to keep the relevant exhibits (Doc. 112) sealed.

## VIII.    COUNSEL

In his emergency motion to appoint counsel (Doc. 116), Plaintiff states that he "recently learned" that Defendants' delay in providing him specialty GI care has resulted in dysplasia progressing to abnormal growths and an EGD showed "tumor-like 'nodules . . . [that] are

probably cancer," for which the physician "blamed the nearly two (2) year delay" (*Id.* at 1). Because of this, Plaintiff must have "another surgery to cut out the nodules and determine if the cancer is spreading" (*Id.* at 1).

Plaintiff also states that he cannot afford counsel, cannot hire counsel on a contingency basis due to his imprisonment, and is proceeding *in forma pauperis* (*Id.*). Plaintiff further claims that his "imprisonment greatly limits his ability to litigate" and that he "has limited access to legal resources and limited legal knowledge" (*Id.*).

Plaintiff additionally asserts that this case "has evolved into a delay of treatment case that is much more complex [] legally and factually," as he now must have an expert witness to show "that the delay worsened [his] condition and adversely affected [his] prognosis" but "[m]ost (if not all) expert witnesses refuse to work with *pro se* litigants" (*Id.* at 2). According to Plaintiff, the medical issues in this case "are complex and will require significant research and investigation" that he cannot do due to his imprisonment (*Id.*). Plaintiff further states that damages are now an issue, and that both Defendants and "BOP staff in West Virginia likely share liability" for his claims in a manner that adds legal complexity (*Id.*). Plaintiff also claims that this is an emergency because he "urgently need[s] another surgery now, not in two years" (*Id.*).

Plaintiff also filed a motion for assistance in recruiting counsel (Doc. 142). In this motion, Plaintiff claims he has been attempting to recruit counsel but has limited resources (*Id.* at 1). Plaintiff also states that his criminal attorney recommended two attorneys to him, but Plaintiff only has their phone numbers and not their addresses, and Defendant Knox County once denied him permission to call one of the attorneys, which he states was to prevent him from

obtaining counsel (*Id.*). Plaintiff suggests that the Court have him transported to the federal courthouse so that the United States Marshals Service can allow him to call counsel (*Id.*).

Plaintiff also filed supplements to these motions (Docs. 141, 147). In the first supplement, Plaintiff indicates in relevant part that after his criminal attorney obtained a copy of his medical records for him, he received approximately 100 additional pages that Knox County had omitted from records it previously provided him, and that the records indicate that Knox County omitted a page due to security even though he has told them he wants all records, even if they are redacted due to security (Doc. 141, at 1–2). In the second supplement, Plaintiff states Knox County is requiring him to have an attorney to access his medical records and other discovery documents pursuant to the Public Records Act (Doc. 147, at 1–2).

Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993). A district court has discretion to determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–06.

As to the first two factors, this action is proceeding only as to Plaintiff's claim that Defendants McIntosh and Newman failed to ensure Plaintiff timely received needed GI treatment, which is a common prisoner claim that is not overly factually or legally complex. The Court declines to speculate as to any future amendments to this action, especially as it has notified Plaintiff that it will not look favorably on future amendments. Also, while Plaintiff correctly asserts that his claim for delay of treatment proceeding herein may require expert testimony, *see*, *e.g.*, *Anthony v. Swanson*, 701 F. App'x 460, 463 (6th Cir. 2017), and makes the

conclusory assertion that "[m]ost (if not all) expert witnesses refuse to work with *pro se* litigants" (Doc. 116, at 2), Plaintiff does not provide details about any efforts he has undertaken in this action to obtain expert testimony that have failed solely due to his *pro se* status, which is especially notable as he states that he has already encountered a physician who opined that the delay in him receiving treatment caused him injury (*Id.* at 1). It is further apparent that Plaintiff may also obtain such testimony through other avenues than appointment of counsel. *See* Fed. R. Evid. 702. As to the third factor, Plaintiff's filings demonstrate that he can adequately present his claims.

Also, Plaintiff's allegations regarding his indigency, legal knowledge, and access to legal resources are common for prisoner plaintiffs. Moreover, as to Plaintiff's allegations regarding Defendants' refusals to provide him with documents pursuant to his requests under the Public Records Act without an attorney, as set forth below, as the Court will resolve the parties' current discovery disputes, has now screened Plaintiff's amended complaint, and has issued appropriate notifications to both parties, Plaintiff may now seek discovery from Defendants in a manner that should moot this argument. And while Plaintiff also asserts that the records his criminal attorney obtained for him included additional medical records, some of which had been omitted, rather than redacted, for security purposes, omissions of documents due to security concerns is not an unexpected occurrence in prisoner cases, and Plaintiff provides no facts suggesting that these omissions were so egregious as to make this an extraordinary case where Plaintiff is entitled to appointment of counsel. Additionally, this Court is not a resource for Plaintiff to find publicly available information for attorneys.

Thus, Plaintiff has not established that this is an exceptional case where he is entitled to appointment of counsel, and his motions regarding this relief (Docs. 116, 142) are **DENIED**.

## IX. STAY REQUESTS

First, Defendants filed a motion to stay this proceeding through April 2025 due to Plaintiff's EGD that was scheduled in that month, in which they also sought an extension of time of up to May 14, 2025, to respond to the complaint (Doc. 65, at 1–2). Plaintiff filed a response in opposition (Doc. 78). Defendants also filed a motion for stay of discovery until the Court ruled on their pending motions to dismiss Plaintiff's complaint (Doc. 104), to which Plaintiff filed a response in opposition (Doc. 114). Plaintiff additionally filed a motion to lift stays in this case (Doc. 125).

However, as (1) the relevant deadlines in Defendant Knox County's original motion to stay (Doc. 65) have passed; (2) Plaintiff has now filed an amended complaint (Docs. 106, 106-1, 116); (3) the Court has now denied Defendants' pending motions to dismiss as set forth above; and (4) the Court never granted any stay of this case, Defendant Knox County's motions to stay this action (Docs. 65, 104) and Plaintiff's motion to lift stays (Doc. 125) are **DENIED** as moot.

## X. DISCOVERY

On February 26, 2025, the Court entered an order granting Plaintiff's prior motions to compel discovery to the extent that it ordered Defendants to treat any discovery requests they had received from Plaintiff as served on the date of entry of that order (Doc. 71, at 10). This order also allowed Plaintiff to file an amended complaint within fifteen days of entry of that order, which Plaintiff subsequently notified the Court and Defendants that he elected not to do (*Id.* at 7; Doc. 87).

Accordingly, on March 14, 2025, Defendants filed motions to dismiss Plaintiff's original complaint (Docs. 92, 93). And subsequently, on March 28, 2025, Defendants filed a motion to

24

stay discovery pending the Court ruling on their motions to dismiss (Doc. 104). However, on March 31, 2025, the Clerk docketed[3] an amended complaint from Plaintiff (Doc. 106-1, at 11).

Plaintiff has now filed a motion to produce his medical records under seal (Doc. 98), which the Court liberally construes as a motion for discovery. In this motion, Plaintiff notes that Defendants have previously stated they have no objection to filing his medical records under seal and states that he wants Defendants to file a complete certified copy of his medical records that they serve on him with file-stamped page numbers (*Id.* at 1–2). Defendants did not file a response to this motion. Plaintiff also filed two motions seeking to compel discovery, to deem any objections to his discovery requests waived, and for sanctions based on Defendants' failure to answer his discovery requests, in which he asserts that Defendants have improperly refused to provide him discovery based on their pending motions to dismiss and/or motion to stay discovery (Docs. 137, 150), to which Defendants filed responses (Docs. 144, 159), and Plaintiff filed a reply (Doc. 166).

The Court understands Plaintiff's apparent confusion and frustration with Defendants not responding to his discovery requests despite the language of the Court's previous order. But the Court also understands Defendants' position that, given Plaintiff's act of filing an amended complaint less than thirty days after the Court entered its previous order regarding discovery, the requirement that Courts screen prisoner complaints, *see, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and Defendants' motions to dismiss Plaintiff's original complaints and motion to stay

_____

[3] As Plaintiff signed his amended complaint on March 27, 2025 (Doc. 106-1, at 11), the Court considers this the date on which he filed it. *See, e.g., Houston v. Lack*, 487 U.S. 266, 273 (1988) (providing that a prisoner's complaint is deemed "filed" when the prisoner submits it to prison officials for mailing; *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir 2008) (noting that the signing date on a *pro se* prisoner's pleading is the filing date, unless there is evidence to the contrary). However, as it appears likely that Defendants received Plaintiff's amended complaint on the same date as the Court, the Court provides the docketing date in this sequence of events.

discovery pending the Court's disposition of its motions to dismiss the original complaint (Docs. 92, 93, 104), it was unclear what, if any, of Plaintiff's claims would proceed in this action, which made the parties proceeding with discovery in this setting somewhat fraught.

Accordingly, given the procedural oddities in this case and the fact that the Court has now (1) screened Plaintiff's amended complaint; (2) notified Plaintiff that the Court will look unfavorably on further amendments of his complaint; and (3) notified Defendants that the screening standard the Court used in screening the amended complaint was substantively identical to that of Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that the Court will therefore look unfavorably on any motions to dismiss this action for failure to state a plausible claim for relief, the Court is confident that the parties may now engage in productive discovery without further delay.

As such, Plaintiff's motions regarding filing of his medical records under seal and regarding discovery (Docs. 98, 137, 150) are **GRANTED in part** only to the extent that, within forty-five days of entry of this order, Defendants shall (1) file Plaintiff's medical records **UNDER SEAL** in the Court's docket and provide Plaintiff a copy of this filing, and (2) respond to Plaintiff's discovery requests. All other requests for relief in these motions (*Id.*) are **DENIED**.

## XI. UTGC APPOINTMENT SANCTIONS

Plaintiff has filed a motion for sanctions (Doc. 113) asserting that Defendants misled the Court about the nature of the appointment he had with UTGC in January 2025 and specifically challenging both (1) various statements from Defendants in filings about this appointment and (2) the veracity of two sworn declarations from PA Melissa Federici, about which Plaintiff previously filed a motion to strike that the Court denied (*Id.* at 1–4; Docs. 25, 25-1, 32, 39, 47, 59, 67). Defendants filed a response in opposition to this motion (Doc. 118), and Plaintiff filed a

reply (Doc. 123). Plaintiff also filed a supplemental declaration in which he asserts in relevant part that he has received a medical record indicating that PA Federici knew he was scheduled with a nurse, rather than a doctor, for this appointment (Doc. 141-1, at 3).

The main thrust of this motion is that Defendants' filings with the Court representing that Plaintiff had an appointment to see a GI specialist in January 2025, including PA Federici's declarations, were misleading because this appointment was only an initial consultation at which Plaintiff had no testing and did not see a doctor or GI specialist (Doc. 113; Doc. 123; Doc. 141-1, at 3). However, it is apparent from all the parties' filings regarding this issue that KCDF medical staff obtained an appointment for Plaintiff in January 2025 at UTGC, which is a specialty GI clinic,[4] and that Defendants therefore used the general term "GI specialist" to refer to this appointment. While Plaintiff categorizes the use of this term as misleading because he did not receive an EGD or other medical care at this appointment and saw a nurse rather than a doctor, nothing in the record suggests that Defendants' language in their filings or the allegations in PA Federici's declarations was intentionally misleading in any way, and Plaintiff's implied assertion that a nurse cannot specialize in GI issues has no merit.

Accordingly, Plaintiff's motion for sanctions (Doc. 113) is without merit, and it is **DENIED**.

---

[4] Specifically, the website for UTGC states in relevant part as follows: "The board-certified gastroenterologists at University Gastroenterology specialize in the prevention, diagnosis and treatment of digestive disorders . . . [which include] diseases related to the esophagus, stomach, small bowel, colon, gallbladder, liver and pancreas. Our team performs a wide range of diagnostic and therapeutic procedures for patients with gastrointestinal diseases." https://www.utmedicalcenter.org/locations/university-gastroenterology (last visited Sept. 9, 2025).

## XII.    CONSENT CONTEMPT AND SANCTIONS

Plaintiff also filed a motion for contempt and sanctions (Doc. 126) stating Defendants failed to confer with him about whether he consented to the Magistrate Judge but may have improperly indicated that the parties conferred about this issue in the filed consent form (Doc. 119), which he therefore seeks to strike if this is the case.  Defendants filed a response in opposition to this motion acknowledging that they did not confer with Plaintiff before filing the form indicating that the parties do not consent to the Magistrate Judge because doing so "would have been futile given the case history[,] voluminous record[,]" and the fact that Defendants' counsel agreed that they would not consent (Doc. 129, at 1–2), and Plaintiff filed a reply (Doc. 134).

The Court declines to hold Defendants in civil contempt or to otherwise sanction them for failing to confer with Plaintiff regarding consent to the Magistrate Judge.  While the Court prefers the parties to confer about this issue in accordance with the standard order it issues, as Defendants did not consent to the Magistrate Judge, such a conferral would have been futile in this case.

Accordingly, Plaintiff's motion for contempt and sanctions (Doc. 126) is **DENIED**.

## XIII.    INJUNCTIVE RELIEF

Plaintiff has filed numerous motions requesting injunctive relief that are still pending (Docs. 69, 73, 120, 121, 133, 156, 160).  The Court will briefly summarize Plaintiff's requests for injunctive relief before setting forth the applicable factors and analyzing his requests.

28

### A. Requests

#### 1. Treatment Plan

Plaintiff requests that the Court require KCDF officials to provide him with (1) an EGD as soon as possible, (2) Tums as needed, and (3) a wedge pursuant to the UTGC nurse's treatment plan (Doc. 69, at 1–3). In his reply, Plaintiff states that he has received the Tums, so this request is moot (Doc. 115, at 7). It is also apparent from various filings that Plaintiff received an EGD after filing this motion (Doc. 116, at 1; Doc. 167-1, at 2). Accordingly, it appears that the only item Plaintiff still requests based on this motion is a wedge, which Plaintiff states a registered nurse has denied him.

#### 2. Medical Diet

Plaintiff requests that the Court allow him to refuse the "Heart Healthy" diet because it does not mean he receives different trays than other inmates and is instead only a commissary ordering restriction, and PA Federici denied his request to refuse this diet (Doc. 73, at 1–2).

#### 3. Cancer Treatment

Plaintiff states that he recently learned he has an aggressive cancer and needs surgery to cut out tumors, and he therefore "beg[s] the Court to order Defendants to provide cancer care immediately so it doesn't spread anymore" (Doc. 120, at 1–2). Plaintiff also requests UTGC records faxed on April 15, 2025, and an evidentiary hearing (*Id.* at 2).

#### 4. General Relief

Plaintiff requests that the Court grant him "fair access to the courts" that he asserts Defendants have denied him before setting forth various specific requests (Doc. 121, at 1). First, Plaintiff states that KDCF officials have not allowed him to repair his eyeglasses since he broke them approximately two weeks earlier (*Id.* at 1–2). Next, Plaintiff claims that he can only use

29

pencils but the pencil sharpener in his unit is broken, and he therefore speculates that he will soon run out of "functional writing implements" (*Id.* at 2). Plaintiff then claims that KCDF officials have again taken away his ability to access tablets and recreational opportunities, and he therefore had not showered for five days (*Id.*). Plaintiff also asserts that Defendants failed to correct false statements in filings and have not provided him discovery (*Id.* at 3). Plaintiff further claims that Defendants (1) have withheld medical records regarding scheduling, even though he has told Defendants that they may redact such records but must produce them, and (2) did not confer with him about consent to the Magistrate Judge (*Id.* at 4). Plaintiff additionally claims that he still does not have a wedge, he could not access sick call even though he had health issues at the time of drafting the motion, and that Knox County would not allow him to consult with a UTGC doctor about his cancer diagnosis and treatment even though a physician's assistant told Plaintiff the doctor wanted to do so (*Id.* at 5–6).

### 5. Mail

Plaintiff states that KCDF interference with his mail has been "an ongoing issue," and he believes it is deliberate and retaliatory (Doc. 133, at 1). Plaintiff specifically claims that a KCDF policy requires inmates to sign a log for legal mail that states how many pieces of mail the inmate is supposed to receive (*Id.* at 1). But once, an officer put legal mail under Plaintiff's door without allowing him to sign or view the log (*Id.* at 1–2). Plaintiff filed a grievance about this incident and appealed the response to that grievance, but an unknown jail officer stated his appeal was not an appeal, so Plaintiff filed a grievance against that unknown jail officer that was rejected (*Id.* at 3). Plaintiff therefore states that he will be adding claims about these incidents before again asserting that he has been unable to obtain discovery in this matter (*Id.*). As relief,

Plaintiff seeks copies of his grievances and identification of all staff involved with his grievances (*Id.*).

Also, in his motion for a blanket extension of fourteen days for his filings (Doc. 90), Plaintiff sets forth various delays he has experienced in receiving jail mail (*Id.* at 1–2).

### 6. Cancer Medications

Plaintiff claims that he is prescribed Omeprazole, famotidine, Ensure, and Sucralfate to treat his cancer, but he frequently misses doses due to the manner in which prescription medications are dispensed in the jail (Doc. 156, at 1). Specifically, Plaintiff claims the in the two weeks before he filed this motion, he missed all medication doses on July 9–10, missed a dose of Ensure on July 12, missed two doses of Sucralfate on July 16, and missed a dose of Ensure on July 17 (*Id.*).

### 7. Medical Records

Plaintiff claims that his jail medication records for July 9, 10, and 16, 2025, are false and such falsifications "severely prejudice [his] case" (Doc. 160, at 1). In his attached declaration, Plaintiff specifically states that on July 9, "Med Tech Brown falsely reported in [his] records that she dispensed [his] 8pm dose of Ensure and Sucralfate, despite not being present when [his] 8 pm meds were dispensed" (Doc. 160-1, at 1). Plaintiff also claims that on July 10, 2025, "Med Tech Collins stated she 'forgot' [his] Ensure, but falsely reported that she dispensed [his] 8 pm dose in the records" (*Id.*). Additionally, on July 16, 2025, "Med Tech Walker advised [him] that the pharmacy was out of Sucralfate[] but falsely reported dispensing [his] 4 pm dose" (*Id.* at 1–2). Plaintiff tried to file a grievance about these incidents, but jail staff refused to process it (*Id.* at 2).

31

## B.    Standard

In determining whether to grant injunctive relief, courts balance four factors: (1) whether the plaintiff "has shown a strong likelihood of success on the merits"; (2) whether the plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).  Injunctive relief is "an extraordinary remedy never awarded as of right."  *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Such relief "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet*, 305 F.3d at 573 (citations omitted).  Also, requests for injunctive relief that are unrelated to the issues in the action are inappropriate.  *See Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945))).

## C.    Analysis

### 1.    Strong Likelihood of Success

The record establishes Plaintiff has not shown a strong likelihood of success on the merits of his delay of medical care claim proceeding herein.  As set forth above, for Plaintiff to establish that any Defendant failed to provide him medical care in a manner that violated the Fourteenth Amendment, Plaintiff must establish that the Defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Helphenstine*, 60 F.4th at 317 (citations omitted).

32

In screening Plaintiff's amended complaint, the Court has liberally construed Plaintiff's factual assertions to plausibly allege that Defendants McIntosh and Newman violated his constitutional rights by failing to timely ensure he obtained an EGD despite knowing that he needed this procedure. But nothing in the record strongly suggests this omission was reckless or intentional, rather than negligent. Accordingly, Plaintiff has not established a substantial likelihood of success on the merits of his claim proceeding herein.

### 2.    Irreparable Injury

Plaintiff also has not established that he will suffer any irreparable injury without the requested preliminary injunctions.

First, regarding the wedge, while Plaintiff alleges that a wedge would alleviate symptoms that a folded mat does not. As discussed above, Plaintiff has not set forth proof that any KCDF official knows but ignores that the folded mat does not provide him relief.

Next, Plaintiff has not demonstrated that the commissary ordering restriction pursuant to the "Heart Healthy" diet will cause him an irreparable injury.

As to cancer treatment, while the Court again understands Plaintiff's sense of urgency regarding his cancer diagnosis and the information he has received about the aggressive nature of that condition, especially given the length of time it took for Plaintiff to receive an EGD while confined in the KCDF, Plaintiff does not set forth any facts or proof from which the Court can plausibly infer that any Defendant or KCDF official has recklessly or intentionally delayed or refused to provide him with needed cancer treatment since his relevant diagnosis or any other facts suggesting that he may suffer irreparable injury without a preliminary injunction regarding this treatment.

33

As to Plaintiff's requests for general relief, many of these are, at best, only tangentially if at all related to the claim proceeding herein. Nevertheless, the Court also finds that Plaintiff has not set forth facts suggesting that he will suffer an irreparable injury without the Court issuing a preliminary injunction regarding fixing his glasses, a pencil sharpener, the law library, a shower, allegedly false statements in Defendants' filings, discovery, medical records, consent to the Magistrate Judge, sick call, or a consult with a physician.

Plaintiff also has not established that he will suffer an irreparable injury without the Court issuing a preliminary injunction regarding his mail, cancer medications, or medical records. While Plaintiff asserts that he has missed some doses of some prescribed substances, he does not provide any facts or proof establishing that these missed doses were due to reckless or intentional acts, or that the missed doses caused any injury to him. Likewise, while Plaintiff asserts that his medical records incorrectly state that he received certain doses of medications that he did not receive, he provides no facts or proof suggesting that these incorrect entries were intentionally falsified or will cause him any irreparable injury.

Accordingly, Plaintiff has not established that he will experience an irreparable injury absent the preliminary injunctions.

### 3. Substantial Harm

As to the third factor, nothing in the record suggests that granting Plaintiff the requested preliminary injunctions would cause substantial harm to others.

### 4. Public Policy

As to the fourth factor, district court intervention in prison operations without a compelling reason is against public policy. *Glover v. Johnson*, 855 F.2d 277, 285–87 (6th Cir. 1988) (setting forth public policy concerns regarding court interference with jail administration

34

and instructing that courts should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"). Again, the Court is sympathetic to Plaintiff's understandable worry about the status of his condition. However, Plaintiff has not presented a compelling reason for the Court to intervene in jail administration in any of his filings seeking injunctive relief. Accordingly, this factor also weighs against granting Plaintiff relief.

### 5. Balancing Factors

After balancing the relevant factors, the Court finds that Plaintiff has not established that he is entitled to the requested preliminary injunctions.[5] Accordingly, Plaintiff's motions requesting this relief (Docs. 69, 73, 120, 121, 133, 156, 160) are **DENIED**.

## XIV. CONCLUSION

For the reasons set forth above:

1. Plaintiff is **NOTIFIED** that the Court will look unfavorably on any future (1) motions seeking to control the conditions of his confinement; and (2) any attempts to amend his complaint, whether through piecemeal filings or a full complaint;

2. Defendants are **NOTIFIED** that, as the Court applied the screening standard set forth above to Plaintiff's amended complaint in a manner that is substantively identical to that of Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will also look unfavorably on any motions to dismiss this action for failure to state a plausible claim for relief;

3. The Clerk is **DIRECTED** to file the documents number 106, 106-1, and 116 as a single second amended complaint on the Court's docket. However, the Court **NOTIFIES** Plaintiff that this is the **ONLY** time the Court will address a piecemeal filing as a part of his complaint, that the Court only does so to progress this action without further delay for the benefit of both parties, and the Court

---

[5] As the Court examined these requests under the Fourteenth Amendment, which provides pretrial detainees more protection than the Eighth Amendment provides convicted prisoners, it is evident that Plaintiff's requests for injunctive relief also would not survive Eighth Amendment scrutiny. *See Love v. Franklin Cnty.*, 376 F. Supp. 3d 740, 745 (E.D. Ky. 2019) (finding "the Fourteenth Amendment affords pretrial detainees greater protections than those afforded to convicted prisoners by the Eighth Amendment") (citations omitted).

reemphasizes its earlier notice to Plaintiff that it will look unfavorably on any future attempts to amend the complaint;

4. Only Plaintiff's claim that on July 2, 2024, Defendant Newman ordered Defendant McIntosh to schedule Plaintiff for an EGD but neither Defendant Newman nor Defendant McIntosh ensured that Plaintiff timely received this treatment will proceed herein;

5. All other claims and Defendants are **DISMISSED**;

6. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Newman and McIntosh;

7. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the Clerk shall sign and seal the summonses and forwarded them to the United States Marshal for service pursuant to Rule 4 of the Federal Rules of Civil Procedure. Service on Defendants Newman and McIntosh shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

8. Plaintiff is **NOTIFIED** that failure to timely return the completed service packets will result in dismissal of this action;

9. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against her;

10. Plaintiff's motion to withdraw a number of motions (Docs. 70, 72, 79, 85, 86) as moot (Doc. 108), is **GRANTED** to the extent that the Clerk is **DIRECTED** to terminate the relevant motions (Docs. 70, 72, 79, 85, 86);

11. Defendants' motions to dismiss Plaintiff's original complaint (Docs. 92, 93) are **DENIED** as moot in light of Plaintiff's amended complaint (Docs. 106, 106-1, 116);

12. Plaintiff's first four motions for authorities (Docs. 99, 148, 154, 155) are **DENIED** as moot;

13. Plaintiff's remaining motions for authorities (Docs. 162, 169) are **GRANTED** only to the extent that Defendants are **ORDERED** to provide Plaintiff with the case law he has requested in them within five (5) days of the date of entry of this order, if they have not already done so;

36

14.     As to all future motions requesting Defendants to provide legal authorities, Plaintiff is **ORDERED** to request the relevant legal authorities **DIRECTLY** from Defendants' counsel, and Defendants' counsel **SHALL** respond thereto by providing Plaintiff with the requested authorities within fifteen days. Plaintiff therefore **SHALL NOT** file a motion with the Court unless Defendants fail to meet this deadline;

15.     In light of the lack of any opposition thereto, the parties' motions for extensions (Docs. 97, 109, 127, 149, 154) are **GRANTED** only to the extent that the Court deems the parties' relevant filings timely filed;

16.     Plaintiff's motions for extension of time to file a response to the motion to quash his subpoena (Docs. 161, 163, 170) are **GRANTED t**o the extent that Plaintiff shall have up to and including **October 6, 2025**, to file that response;

17.     Plaintiff's motion for a blanket extension of fourteen days for his filings due to various incidents regarding his mail in the jail (Doc. 90) is **GRANTED** only to the extent that the Court will provide Plaintiff an additional fourteen days for relevant filing deadlines;

18.     Plaintiff's motions regarding the status of this case (Docs. 132, 168) are **GRANTED in part** only to the extent that the Court enters the instant memorandum and order;

19.     Plaintiff's unopposed motion to seal exhibits (Doc. 111) is **GRANTED** only to the extent that the Clerk is **DIRECTED** to keep the relevant exhibits (Doc. 112) sealed;

20.     Plaintiff's motions regarding appointment of counsel (Docs. 116, 142) are **DENIED;**

21.     The parties' motions regarding stays (Docs. 65, 104, 125) are **DENIED as moot;**

22.     Plaintiff's motions regarding filing of his medical records under seal and regarding discovery (Docs. 98, 137, 150) are **GRANTED in part** only to the extent that, within forty-five days of entry of this order, Defendants shall (1) file Plaintiff's medical records **UNDER SEAL** in the Court's docket and provide Plaintiff a copy of this filing, and (2) respond to Plaintiff's discovery requests. All other requests for relief in these motions (*Id.*) are **DENIED**;

23.     Plaintiff's motions regarding contempt and sanctions (Docs. 113, 126) are **DENIED**;

24.     Plaintiff's motions for injunctive relief (Docs. 69, 73, 120, 121, 133, 156, 160) are **DENIED**; and

25.     Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing.  Pursuant to Local Rule 83.13, it is the duty of a *pro se* party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13.  Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

                                   */s/ Travis R. McDonough*                     
                                   **TRAVIS R. MCDONOUGH**
                                   **UNITED STATES DISTRICT JUDGE**