UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

Robert Z. Whipple, III

v                                    3:24-cv-335

Knox County, et al

FILED

APR 15 2025

Clerk, U.S. District Court
Eastern District of Tennessee
At Knoxville

EMERGENCY MOTION FOR APPOINTMENT OF COUNSEL

Pursuant to 28 U.S.C. § 1915(e)(1), Plaintiff moves for an order appointing counsel. My grounds are:

1. I recently learned that Defendants' delays in providing specialty gastrointestinal (GI) care has caused my dysplasia (abnormal growths associated with Barrett's Esophagus) to progress. Dr. Benjamin Dalton, a GI specialist at UT Medical Center, intended to use RFA (Radio Frequency Ablation) to remove the abnormal growths, but when he began my EGD, he learned that I now have tumor-like "nodules" (that weren't present in my 2023 EGD). Dr. Dalton says the nodules are probably cancer and specifically blamed the nearly two (2) year delay as the cause. I now require another surgery to cut out the nodules and determine if the cancer is spreading.

2. I am unable to afford counsel, and due to my imprisonment, I have no way to hire an attorney on a contingency basis. I am proceeding in forma pauperis.

3. My imprisonment greatly limits my ability to litigate. I have limited access to legal resources and limited legal knowledge.

4. This case began a complete denial of treatment, but has evolved into a delay of treatment case that is much more complex — legally and factually.

5. Now I have to have an expert medical witness to prove that the delay worsened my condition and adversely affected my prognosis. Hill v. DeKalb Regional Youth Detention Center, 40 F 3d 1176, 1188 (11th Cir. 1994).

6. Most (if not all) expert witnesses refuse to work with pro se litigants.

7. The medical issues involved in this case are complex and will require significant research and investigation that I won't be able to do because of my imprisonment.

8. I originally sued only county defendants because I was primarily concerned with getting treatment, not damages, but now that my prognosis is significantly worse, damages are an issue. As such, the United States and/or BOP staff in West Virginia likely share liability since they failed to take me for follow up in 2023. This adds a great deal of legal complexity (sue separately or join them in this case?) (Bivens or FTCA?) (venue?) (etc.)

9. This is an emergency because I urgently need another surgery now, not in two years. I have already shown I am unable to succeed on a preliminary injunction motion without help.

    Respectfully submitted on 4-14-25,

    _[signature]_

    Plaintiff, pro se

Robert Whipple 460384
5001 Maloneyville Rd
Knoxville, TN 37918



KNOXVILLE TN 377

14 APR 2025 PM 3 L

LEGAL

MAIL

Clerk, U.S. District Court
800 Market St #130
Knoxville, TN 37902

**RECEIVED**

APR 15 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

37902-230330

FILED

MAR 3 1 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

___Robert Z. Whipple, III___ )

_____ )

_____ )

(Enter above the NAME of the
plaintiff in this action.)              )          No. 3:24-cv-335

v.                                      )

___Knox County, et al.___ )

_(remaining defendants listed_ )

_on page 2)_ )

(Enter above the NAME of each
defendant in this action.)              )

AMENDED     COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. Section 1983)

## I.     PREVIOUS LAWSUITS

A.     Have you begun other lawsuits in state or federal court dealing with the same facts
involved in this action or otherwise relating to your imprisonment? YES ( ) NO (X)

B.     If your answer to A is YES, describe the lawsuit in the space below. (If there is more
than one lawsuit, describe the additional lawsuits on another piece of paper, using the
same outline.)

1.     Parties to the previous lawsuit:

Plaintiffs: _None with these facts or this term of_

_imprisonment_

Defendants: _NA_

_____

1

*All sued in individual capacity*

Complete list of defendants:

1. Knox County
2. Jacob Clemons
3. Melissa Federici
4. Deanna Jones
5. Donald Keeble
6. FNU McBrayer
7. Margaret McIntosh
8. Julie Newman
9. Barbara Norris
10. Sherry Whitehead

2

2. COURT: (If federal court, name the district; if state court, name the county):

_NA_

3. DOCKET NUMBER: _NA_

4. Name of Judge to whom case was assigned: _NA_

5. Disposition: (For example: Was the case dismissed? Was it appealed? Is it still pending?) _NA_

6. Approximate date of filing lawsuit: _NA_

7. Approximate date of disposition: _NA_

II. PLACE OF PRESENT CONFINEMENT: _Roger D. Wilson Detention Facility (RDWDF)_

A. Is there a prisoner grievance procedure in this institution? YES (X) NO ( )

B. Did you present the facts relating to your complaint in the prisoner grievance procedure? YES (X) NO ( )

C. If your answer is YES,

1. What steps did you take? _Filed grievances when available, appealed to all 3 levels_

2. What was the result? _denied_

D. If your answer to B is NO, explain why not. _NA_

E. If there is no prison grievance procedure in the institution, did you complain to the prison authorities? YES ( ) NO ( ) _NA_

F. If your answer is YES,

1. What steps did you take? _NA_

@ 3

(III)(C)

1. Knox County, Municipality
2. Jacob Clemons, Correctional Officer (CO), Knox County Sheriff's Office (KCSO)
3. Melissa Federici, Physician's Assistant (PA), KCSO
4. Deanna Jones, LPN Med Supervisor, KCSO
5. Donald Keeble, Medical Director, KCSO
6. FNU McBrayer, LPN, KCSO
7. Margaret McIntosh, Medical Assistant, KCSO
8. Julie Newman, Nurse Practitioner (NP), KCSO
9. Barbara Norris, Unknown, US Marshals Service (USMS)
10. Sherry Whitehead, RN Med Supervisor, KCSO

4

2. What was the result? _NA_

## III. PARTIES

(In item A below, please your name in the first blank and place your present address in the second blank. Do the same for any additional plaintiffs.)

A. Name of plaintiff: _Robert Z Whipple, III_

Present address: _#460384, 5001 Maloneyville Rd, Knoxville, TN 37918_

Permanent home address: _homeless_

Address of nearest relative: _Bob Whipple, 6506 Lakeridge Dr, Texarkana, TX_
_(father)_ _75503_

(In item B below, place the FULL NAME of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the additional names, positions, and places of employment of any additional defendants.)

B. Defendant: _Knox County_

Official position: _Municipality_

Place of employment: _NA_

C. Additional defendants: _the individual defendants are listed_
_beginning on page 4_
_* ALL INDIVIDUAL DEFENDANTS ARE SUED IN THEIR_
_INDIVIDUAL CAPACITY *_

## IV. STATEMENT OF CLAIM

(State here as briefly as possible the FACTS of your case. Describe how EACH defendant is involved. Include also the names of other persons involved, dates and places. DO NOT give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.)

1. _KCSO's medical policies are promulgated by Defendants Spangler_
_and Keeble._

5

2. I have a condition known as Barrett's Esophagus, a gastrointestinal (GI) condition associated with increased cancer risk and requiring regular cancer screening with an EGD and biopsy.

3. On 8-14-23, Dr. Mailloux performed an EGD/biopsy on me at Raleigh General Hospital (RGH) in West Virginia. I was incarcerated at FCI Beckley at that time. The results of the biopsy were abnormal and indicated dysplasia. See DE 31, Exhibits E-G. NP Ellis of FCI Beckley told me that dysplasia means cancer cells are present and I believed that I had cancer until I spoke to NP Link at UT Gastroentevology clinic (UT Gastro) on 1-28-25. According to Link, I will not know if I have cancer until I get another EGD/biopsy.

4. After the 8-14-23 EGD/biopsy, "close patient follow-up [was] recommended." **Id.**, Exhibit F-1, G-1.

5. Dr. Mailloux made the following recommendation, after the biopsy results came back:

   "Needs repeat EGD in Nov 2023
      ⊂ biopsy or referral to Tertiary
   hospital for EMR"

   **Id**, Exhibit G-2.

6. I have learned that an EMR is an Endoscopic Mucosal Resection which is a procedure to remove early-stage cancer and precancerous growths from the lining of the digestive tract. (See Mayo Clinic website).

7. FCI Beckley did not take me for this follow-up appointment, and I was released in February 2024 and extradited to Knoxville.

8. I was booked into the RDWDF on 2-22-24.

9. I sent a sick call on 2-22-24 informing medical staff of my abnormal biopsy and requested needed follow-up care. An unknown staff member replied, "You were seen by medical for this issue." This was incorrect, I was not seen in regards to my GI issues or need for follow-up.

10. I sent a sick call on 2-24-24 because I was vomiting blood and not receiving my GI medications. An unknown staff member gave the stock reply, "You were seen by

FILED

MAR 3 1 2025

Clerk, U.S. District Court
Eastern District of Tennessee
At Knoxville C 1

medical for this issue."

11. On 2-27-24 I filed grievance 765618 about not getting GI follow-up care. Defendant replied that "GI is very difficult to get" and blamed a lack of records for not trying to get me the needed GI follow-up care.

12. On 3-11-24 I sent a sick call requesting names of persons answering my sick calls and grievances; an unknown staff refused to provide this information.

13. On 3-6-24 I filed grievance 769296 about getting the wrong dose of my GI medications. Defendant Federici advised they obtained the wrong medical records.

14. I was released from RDWDF on 3-20-24; KCSO staff never did refer me for necessary GI followup care or correct my GI medication dosages.

15. I was booked into RDWDF on 6-15-24. During intake I informed Defendants Clemons and McBrayer of my Barrett's, abnormal biopsy, and need for GI follow-up.

16. I was called to the clinic for a physical on 6-16-24; while there, I told Defendants Newman, Whitehead, and Jones of my Barrett's, abnormal biopsy, and need for GI follow-up.

17. Defendant Keeble, listed as the "collaborating physician" in the order, prescribed me GI medication on 6-17-24.

47

18. Given that Dr. Keeble had sufficient knowledge of my GI condition to prescribe for me, it can be plausibly inferred that he knew or should have known about my abnormal biopsy and need for GI follow-up care from my chart.

19. I have never been examined by any physician, to include Dr. Keeble, during my periods of incarceration at RCWDF from 2-22-24 to 3-20-24 and 6-15-24 to present—either at the facility or off-site.

20. Dr. Keeble did not order GI follow-up care for me.

21. I sent a sick call on 6-18-24 informing medical staff of my urgent need for follow-up care (it was already 7 months overdue at this point). An unknown staff member advised that they need a records release for medical records, even though they had my release signed in March. See DE 47, PG.

22. KCSO finally received the records from Raleigh General on 6-27-24.

23. I filed grievance 814710 for failing to provide needed GI follow-up care. Defendant Federici replied that GI appointments are difficult to obtain for indigent prisoners.

24. I appealed the grievance and was informed that "Per KCSO policy the inmate is responsible for the expenses of any elective surgery or procedures."

25. I infer from these two responses to my grievance about GI follow-up care for my abnormal biopsy, that KCSO is designating my GI follow-up care to screen for cancer as a mere elective procedure, in the same category as a nose job, despite my need for "close follow-up." Therefore, Knox County will not provide my GI follow-up care as a matter of policy.

26. I appealed again; the final appeal was denied.

27. When my final appeal was denied with no indication that KCSO was going to try to get me the needed GI follow-up care, I filed this lawsuit on 8-14-24.

28. The case was screened on 8-20-24, and Defendants immediately started to retaliate.

8

29. I filed for a TRO on 10-18-24 (DE 20), in response Defendants and their counsel began lying repeatedly to the Court, indicating that I would be seen by a GI specialist physician in January 2025. See DE 63.

30. Defendants specifically claimed an appointment was made for 10-29-24, then 2-10-25, and finally 1-28-25. (DE 65).

31. Defendants provided me with medical records on 10-22-24 and provided updated records on 2-3-25. The records show no evidence regarding the multiple reschedules, likely because Defendants were lying.

32. What the records do show is that Defendant Newman ordered Defendant McIntosh to schedule an EGD (not a consult with a nurse) on 7-2-2024, DE 31, Exhibit A. The records show no further effort by Newman to obtain necessary GI follow-up care or supervise McIntosh.

33. The next record concerning my January 2025 appointment is a USMS pre-authorization form, fulled out by McIntosh on 10-15-25 and rejected by Defendant Norris the next day, Id., Exhibit B.

34. With the exception of Norris (whose earliest involvement was October 2024), all defendants were aware of my serious medical need for a GI follow-up no later than 7-2-24.

35. I was taken to the UT Gastroenterology Clinic (UT Gastro) on 1-28-2025. I was seen by a nurse, rather than a

GI specialist physician as the defense promised the Court. I did not receive an EGD as ordered by Newman seven (7) months prior.

36. NP Link of UT Gastro explained that the reason I was not scheduled an EGD was because Knox County failed to send the RGH records to UT. Without those records, only an initial consultation was scheduled. Link had me sign releases for Dr. Graham in London, Ky and for the RGH records so they could get the records they need to schedule my EGD. See Attached Medical Records, Exhibit 2, Addendum.

37. Defendants attempt to justify their lies to the Court regarding the January appointment by lying again, "[UT Gastro] requires a consultation appointment for any individual prior to the scheduling of any subsequent appointments or procedures." DE 65, PageID# 306. This statement contradicts what I was told by NP Link. Notably Defendant Federici states on 10-25-24 in a note in my chart, "I would recommend that he establishes with a local GI and they make the determination of the timeframe recommended for [EGD]," indicating that Defendants knew I was going only for a consult well before lying to the Court. Att. Med. Recs, Exhibit 4; see also. DE 32, 42, 47.

38. There is evidence in the record that Defendants' willingness to provide me with an EGD—a costly procedure—changes according to who is paying. I was a state inmate up until 6-27-25, and during this time, Knox County was responsible for payment and the EGD was deemed "elective." See PIP 23-26. I became a federal inmate on 6-27-25, pursuant to a writ, *United States v. Whipple*, No. 3:24-cr-67 (E.D. Tenn. June 27, 2024). Just five (5) days after USMS became responsible for payment, Defendants reversed course and ordered the EGD scheduled. DE 31, Exhibit A. As Defendants have so far refused to provide discovery (see DE 50, 54), I am unsure why Defendant McIntosh failed to send the RGH so that UT Gastro could schedule the EGD, but I suspect it was due to a concern that the USMS would no longer be paying in January, due to my change of plea on 11-6-24. See DE 25, 25-1, 25-2. Defendants now claim my EGD is scheduled for April 2025, but no records support this assertion and Defendants' credibility is poor.

39. I am scheduled to be sentenced on 4-2-2025 and be returned to state custody thereafter, at which time any payment approval by USMS will lapse. Concerned that a return to state custody would lead Defendants to again reverse course to avoid paying, I asked my criminal defense attorney, Laura Davis, to delay sentencing

until after my EGD in April. Davis attempted to contact the defense, but "[c]ounsel for Knox County have been unresponsive... about their own inaccuracies in filings and whether they would impress upon medical staff the need to take care that Mr. Whipple is able to have his exam." US v Whipple (E.D. Tenn. Mar. 14, 2025). The government opposed the motion to reschedule sentencing and the Court denied it; therefore, I will no longer be under the aegis of the USMS when my EGD appointment day arrives. "Knox County may decide it needs to go through another approval process, which would likely delay Mr. Whipple's examination to a time beyond when his state court matters are completed and he is moved to his next locus of incarceration." Id. Therefore, it is highly speculative at best as to whether I will actually get to see a doctor and have an EGD.

40. Based on this evidence and the foregoing reasoning, I predict my EGD will not occur in April 2025 due to these payment issues and Defendants will claim, once again, that UT Gastro rescheduled, but will provide no proof of this.

41. None of the Defendants, despite actual knowledge of my serious medical need, has followed through to make sure I received an EGD and saw a doctor.

12

42. As of April 2025, I am seventeen (17) months overdue for my EGD (see ¶5) and ten (10) months of that is attributable to Defendants. During this delay I've experienced unnecessary pain and deteriorating health, including: nausea, bloody vomit, difficulty swallowing, and reflux pain. Indeed, Defendant Federici said "worsening symptoms... could be an indication that Barrett's esophagus has progressed to esophageal cancer." Exhibit 4.

43. Both Ms. Davis and myself have asked Defendants to consider other GI providers since UT Gastro is so backlogged, but they refused to answer and it appears from the records that they made no attempt to do so.

44. Dr Smoot in Nashville, TN and Dr. Graham in London, Ky have both been able to schedule EGD appointments for me in weeks, rather than months that UT Gastro requires.

45. Had I been allowed to see a doctor and have an EGD, many of my symptoms would have improved. NP Link told me the doctor can dilate my esophagus to make swallowing easier and an APC, cryoablation, or EMR can remove abnormal growths, which would alleviate pain and nausea as well as stop any bleeding in my upper GI. These procedures are done at the same time as the EGD.

46. As I have still not had an EGD or been seen by a GI specialist physician, I allege a complete denial of treatment, rather than a delay. Any speculation by Defendants as to future treatment, is no more substantial than fairy

dust and just as effective. Speculation is _not_ treatment. As
to injuries caused by this denial, we won't know the extent
of it unless and until I have my EGD and biopsy. What
What I do know now is that I have been in needless
pain and have been terrified that I have cancer for
the past 17 months. I still don't know if I have cancer.
I am still in excruciating pain.

47. Based on the foregoing, I assert claims for: (1) deliberate
indifference, (2) intentional infliction of emotional distress, and
(3) negligent infliction of emotional distress.

Intentional Interference with Prescribed Treatment

48. Following the January appointment, NP Link created a treatment
plan that includes that Defendants "get a wedge for
him at the jail so that he can have his head elevated
greater than 30 degrees at night since he does have bother-
some nighttime reflux symptoms." Att. Med. Recs., Exhibit 2.

49. I was called to the RDWDF clinic on 1-31-25 and told
by Defendant Whitehead that she is overriding UT Gastro's
treatment plans and that I would not be allowed a wedge.
_Id._, Exhibit 1, note. I later learned from records that
Defendant Federici made the decision and that I should "fold
[my] mat in order to elevate head." _Id._ Folding the mat will
not provide the prescribed 30 degree elevation. See DE
69. LPN Glenn was present, but did not speak. Att.
Med. Recs., Exhibit 3.

14

50. I have used a wedge in the past and it drastically reduced my reflux pain at night; the folded mat offers no relief.

51. Based on the foregoing, I assert a deliberate indifference claim.

Forced Medical Treatment

52. Defendant Federici prescribed that I be on "Heart Healthy" diet. Although referred to as a diet, this is misleading. I receive the same trays as inmates not on "Heart Healthy", to include spicy chili mac and fatty beef stew.

53. "Heart Healthy" is actually a commissary ordering restriction and is applied for many different conditions. It is not tailored to individual medical needs or even the needs of any single diagnosis.

54. Shortly after I sought sanctions against the defense (DE 63), I sent a request in writing to refuse the "Heart Healthy" diet against medical advice. Federici refused my request, citing Knox County policy. My request was an "individual instruction" per T.C.A. § 68-11-1803(a) and cited the right to refuse treatment under the Tennessee Healthcare Decisions Act (THCDA). Based on timing (sanction request largely dealt with Federici's lies) and the fact Defendants repeatedly mention the "Heart Healthy" diet in filings, leads me to infer a retaliatory motive. Adding weight to this inference,

15

is that Federici is blatantly violating the THCDA and medical ethics.

55. "Heart Healthy," by restricting commissary purchases, is meant to "affect an individual's physical or mental condition" and therefore meets the definition of "health care." T.C.A. 68-11-1802(a)(6).

56. Commissary is a service I am being denied solely due to my disability.

57. Based on the foregoing, I assert claims for: (1) retaliation, (2) due process violations, (3) violation of the Rehabilitation Act (RA), (4) violation of the Americans with Disabilities Act (ADA), and (5) violation of THCDA.

58. I have personally known inmates to lie about their medical conditions to avoid "Heart Healthy." Inmates of reasonable firmness would be deterred by being forced to remain on "Heart Healthy."

## V. RELIEF

(State BRIEFLY exactly what you want this Court to do for you. Make NO legal arguments. Cite NO cases or statutes.)

Order: compensatory and punitive damages plus costs

Order: injunctions to cure ongoing constitutional violations and prevent future violations

Order: injunctive relief requested at DE 69 and 73

I (☒) hereby certify under penalty of perjury that the above complaint is true to the best of my (☒) information, knowledge and belief.

Signed this ___27th___ day of ___March___, 20_25_.

_Robert J. Whipple, III_
Signature of plaintiff(s)

✱ PLEASE NOTE – I was unable to file my exhibits due to Knox County's dilatory conduct. See Motion to Extend Time and for Legal Copies.

# 17

Robert Whipple 460384
5001 Maloneyville Rd
Knoxville, TN 37918



KNOXVILLE TN 377

28 MAR 2025 PM 2 L

1 OF 2

LEGAL

MAIL

RECEIVED
MAR 3 1 2025
Clerk, U.S. District
Eastern District of Tennessee
At Knoxville

US DISTRICT COURT
800 MARKET ST #130
KNOXVILLE, TN 37902